PEOPLE v. RICHARDSON.

1. RAPE — ASSAULT WITH INTENT TO COMMIT RAPE—INTENT— QUESTION FOR JURY.

In a prosecution for assault with intent to commit rape upon a girl under 16 years of age, where the evidence is convincing that defendant in beginning the assault had an intent to commit rape, the fact that he later abandoned his purpose and did not penetrate her person or attempt to do so, although not interrupted or frightened away may be considered by the jury in determining the question of intent, but is not conclusive evidence that his purpose originally was not to go so far as rape.

2. CRIMINAL LAW — ASSAULT WITH INTENT TO COMMIT RAPE— TRIAL—INSTRUCTIONS—ARGUMENT OF COUNSEL.

In a prosecution for assault with intent to commit rape, where the fact was developed that previous to his marriage and many years prior to the trial defendant had been arrested on an illegal parentage charge, but the case was

On question of assault with intention to commit rape, see note in 42 L. R. A. (N. S.) 524.

On misstatements of facts, or statement of facts not in evidence, by counsel in argument to jury, as grounds for reversal, see note in L. R. A. 1918D, 4.

never prosecuted and, so far as the record shows, there was no reasonable ground for his arrest, and the court stated to the jury that there was nothing to it, instructions to the jury that they might consider it as bearing upon the question of the reputation or good character of defendant, coupled with improper argument of the prosecutor in commenting thereon, *held*, reversible error.

Exceptions before judgment from Newaygo; Brown (William B.), J., presiding.     Submitted June 14, 1923.     (Docket No. 108.)     Decided July 19, 1923.

Elwood Richardson was convicted of an assault with intent to commit rape.     Reversed.

*F. E. Wetmore.* for appellant.

*William J. Branstrom,* Prosecuting Attorney, for the people.

McDonald, J.     Elwood Richardson was convicted of an assault with intent to commit the crime of rape upon a girl under 16 years of age, who was at the time employed as a domestic in his home in Newaygo county.     The information filed against him contains two counts, the first charging statutory rape and the second assault with intent to commit the crime of rape.     The defendant denied the assault.     He was twice tried, the first trial resulting in a conviction of the lesser offense.     The trial court set this verdict aside and granted a new trial.     He was again convicted and has brought his case here on exceptions before sentence.

The first assignment of error is directed to the refusal of the court to take from the jury the charge of assault with intent to commit the crime of rape. A motion with this purpose was made by defendant's counsel at the conclusion of the proofs, and was based on the claim that the undisputed evidence showed the defendant did not intend to commit that offense.

The testimony of the girl as to the assault is substantially as follows:

"And I just went and washed my hands and went over to the towel to wipe my hands and I had a sore on my elbow and he wanted to put camphor on it, and he went to the cabinet to get the camphor and was going to put it on my elbow, and I told him it didn't need it, and then he went back and put the camphor up and he came back and put his arms around me and hugged and kissed me and took me into the bedroom, pushed me into the bedroom. I told him to stop and leave me alone and he wouldn't do it. He wanted me to go upstairs and I told him no. He backed me through the dining room into the bedroom, and pulled the curtain down to the window, and then pulled the curtain to the door and put me on the bed. I told him to stop. He sat me on the side of the bed and pulled up my clothes and put me onto the bed. One arm was around me and he was pulling up my clothes with the other. He unbuttoned my pants, and took them down and got on top of me. He had his private parts out. I felt them on my person. He stayed on top of me about five minutes and then got up and went into the other room. When I got up there was a slimy substance on my clothes and on my person. My pants were down around my feet. I went out into the kitchen. He gave me a dollar bill and told me not to tell his wife, because she would think he was an awful man, and then I was crying and he told me not to cry because he didn't hurt me any."

Counsel contends that this testimony negatives an intent to commit rape, that it shows he had ample opportunity to do so if that had been his intention, that he was not interrupted, that nothing happened to prevent him from doing all he wanted to do, and that, therefore, he could not have had an intent to do anything more than he actually did. We are unable to agree with this contention. The acts of the defendant as shown by this testimony are convincing evidence of an original intention to commit the crime

of rape.    It matters not that he did not accomplish
his purpose.    If, in the beginning or at any time
during the assault, he had an actual intent to commit
a rape, he is guilty of the offense even though he
voluntarily abandoned his purpose.    That he did not
penetrate her person or attempt to do so, though he
had an uninterrupted opportunity, are facts which
the jury may consider in determining the question of
intent, but they are not conclusive evidence that his
purpose was not to go so far as rape.    Counsel
stresses the fact that he was not frightened away,
that the girl was passive and that he did all he wanted
to do.    It is a significant fact that when he gave up
the assault he had left what the girl describes as a
slimy substance upon her person.    From this the
jury might reasonably infer that due to an exuberant
enthusiasm or overheated passion, his sexual force had
been spent before he was able to carry out his intent.
At least the testimony is clear that, up to the time that
his sexual vigor relaxed, he acted like a man who
meant business.    With what intent he committed the
assault was a question for the jury.    The court
correctly refused to grant counsel's motion to eliminate
from the case the charge of assault with intent to
commit the crime of rape.

The most serious question presented by the record
relates to the argument of the prosecuting attorney to
the jury, and the instructions of the court concerning
the arrest of the defendant on an illegal parentage
charge in Kalkaska county.    This arrest took place
previous to his marriage and many years prior to this
trial.    The case was never prosecuted and, so far as
this record shows, there was no reasonable ground for
his arrest.    On this trial the defendant was sworn
in his own behalf, and on cross-examination was
thoroughly interrogated in regard to the Kalkaska in-
cident.    He also called witnesses who testified to his

good reputation in the community where he lived. Most of these witnesses were asked by the prosecuting attorney if they had heard of the Kalkaska arrest, and if they did not know that he had settled it.   So insistent was the prosecutor in keeping this matter before the jury, that the circuit judge felt called upon to say to them:

"So far as that case is concerned, you must understand that there was nothing to it.   *   *   *   Under the circumstances of the testimony ·in this case, you cannot assume in that case at all that there was anything improper, illegal, or any merit whatever to the arrest there.   *   *   *   By the wildest imagination, you wouldn't be allowed to attach any credence or any belief as to any merit of the allegations."

Notwithstanding this the prosecuting attorney said in his address to the jury:

"Gentlemen of the jury, on that question of what happened at Kalkaska, they put Mr. Richardson on the stand, and we had a right to ask him the question. As I said before, we expected him to deny it, but it took place, and that from the testimony, from what he told us here, we have a right to assume that where you find smoke, you generally find some fire."

Objection was made to this argument and thereupon the court instructed the jury how they might consider the Kalkaska arrest.   He said:

"It cannot be considered by the jury in any way, shape or manner, except as bearing upon the question of evidence of good character.   *   *   *   It can only be used by you, as far as this prosecution is concerned, as bearing upon the question of the reputation or good character, so called, of the respondent, but not as any substantive proof as bearing upon the issue of whether or not he actually did have any relations with the girl in Kalkaska county.   *   *   *   It can only be considered by you as a circumstance in this defendant's life as bearing upon the testimony of the witnesses offered upon the subject of good character."

·Immediately following these instructions from the court the prosecuting attorney, continuing his address to the jury, said:

"Gentlemen of the jury, there you have the situation.   Elwood Richardson may be able to summon his character witnesses by the score, but as I said to you before, it doesn't mean anything."

The defendant had denied all charges as to what happened in Kalkaska.   They were not sustained by any proof.   If the court was right in his statement to the jury that there was nothing to that case, he was wrong in permitting them to consider it against the defendant on the question of good character. These instructions were especially harmful to the defendant when coupled with the improper argument of the prosecuting attorney, wherein he stated to the jury that he expected Richardson to deny it, but that it took place and that "where you find smoke you generally find some fire."   The prosecutor is a man of high standing and influence in the county where the defendant was tried, and undoubtedly his statement as to the truth of the Kalkaska charges had the effect of casting suspicion upon the character of the defendant and the credibility of his witnesses.   The argument was not justified by the evidence and was improper.   Its harmful effect was increased by erroneous instructions from the court as to the consideration which the jury might give to the evidence. For this the conviction must be reversed.   As the other questions presented by the assignments are of minor importance and are such as are not likely to arise in a new trial, we deem it unnecessary to discuss them.

The conviction is reversed, and a new trial granted.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.